UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANTHONY MACAGNA,

      Plaintiff,

   -against-

THE TOWN OF EAST HAMPTON, THE      **MEMORANDUM & ORDER**
BOARD OF ASSESSORS OF EAST
HAMPTON, JEANNE NIELSEN,           Civil Action No. 09-3064
Individually and in her Official Capacity,     (DRH) (ETB)
EUGENE DEPASQUALE, Individually and
in his Official Capacity, JILL MASSA,
Individually and in her Official Capacity,
RONALD C. GLOGG, Individually,
SALLY NIELSEN GLOGG, Individually,
JOHN DOE 1-20, Individually and in their
Official Capacities,

      Defendants.
--------------------------------------------------------X

**APPEARANCES:**

**Tarbet, Lester & Schoen, PLLC**
Attorneys for Plaintiff
524 Montauk Highway
P.O. Box 2635
Amagansett, New York 11930
By: Brian J. Lester, Esq.

**Sokoloff Stern LLP**
Attorneys for Defendants The Town of East Hampton, The Board of Assessors
of East Hampton, Jeanne Nielsen, Eugene DePasquale and Jill Massa
355 Post Avenue, Suite 201
Westbury, New York 11590
By: Brian S. Sokoloff, Esq.
   Mark A. Radi, Esq.

**MacLachlan & Eagan LLP**
Attorneys for Defendants Ronald Glogg and Sally Nielsen Glogg
241 Pantigo Road
East Hampton, New York 11937
By: David E. Eagan, Esq.

**HURLEY, Senior District Judge:**

On June 30, 2009, Plaintiff Anthony Macagna ("Plaintiff") commenced this action in the Supreme Court of the State of New York, County of Suffolk, asserting claims pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights in connection with what he maintains was the selective and illegal property tax reassessment of his residence in East Hampton, New York. On July 17, 2009, the action was removed to this Court. Presently before the Court is (1) Plaintiff's motion seeking the remand of this action to state court, together with an award of attorney's fees and costs; (2) a motion to dismiss by Defendants The Town of East Hampton (the "Town"), The Board of Assessors of East Hampton (the "Board"), Jeanne Nielsen ("Nielsen"), Eugene DePasquale ("DePasquale"), and Jill Massa ("Massa") (the Town, the Board, Nielsen, DePasquale and Massa are collectively referred to as "Town Defendants"); and (3) a motion to dismiss by Ronald Glogg ("Ronald") and Sally Nielsen Glogg ("Sally") (Ronald and Sally are collectively referred to as the "Gloggs"). For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction to consider Plaintiff's claims and therefore remands this matter to state court. Because it concludes that it lacks subject matter jurisdiction over Plaintiff's claims, the Court will not address Defendants' motions to dismiss.

## Background

**I.     The Allegations in the Complaint**

The complaint alleges as follows:

On January 14, 2005, Plaintiff purchased residential improved property located at 42 Old West Lake Drive, Hamlet of Montauk, Town of East Hampton (the "Macagna Property") for $2,300,000.00. (Compl. ¶¶ 14, 16.) The most recent certificate of occupancy for the Macagna

Property is dated February 2, 2004 and lists the property as improved with a single-family home, cottage and storage shed. (*Id.* ¶ 15.) Since the date of purchase, Plaintiff has neither (1) applied for or received a building permit to do any work on the Macagna property; nor (2) made "any improvements to the real property that would ordinarily trigger an increase in the property's tax assessment." (*Id.* ¶¶ 17-18.)

In October 2005, Plaintiff cleared an area near the cottage which was overrun by invasive vines to make way for new plantings. Plaintiff believed the cleared area was his property but his neighbors, the Gloggs, alleged that Plaintiff had cleared a small portion of their property lying between Old West Lake Drive and Plaintiff's cottage. (Compl. ¶¶19-21.) Between October 2005 and May 2006 Plaintiff's offer to re-vegetate the disputed area was rejected, with the Gloggs instead demanding substantial amounts of money. (*Id.* ¶¶ 22-23.) The Gloggs also complained to the Town, purportedly leading to Plaintiff being charged in Justice Court with a number of violations. (*Id.* ¶¶ 24-25.) Plaintiff contested the charges but then in January 2007 a proposed plea bargain was reached regarding the Justice Court violations. (*Id.* ¶¶ 35-36.) However, counsel for Sally wrote a letter to the Town Justice, as well as contacted the Town's Supervisor, objecting to the plea bargain. (*Id.* ¶¶ 38-39.) The Town's Supervisor contacted the Town Attorney demanding the proposed plea agreement be withdrawn. (*Id.* ¶¶ 30-40.) In September 2007, a new Assistant Town Attorney was assigned to the matter and the parties entered into the same plea agreement initially proposed by the Town Attorney's office and "stymied by the supervisor" whereby the charges relating to the clearing of the Glogg's property were dismissed. (*Id.* ¶ 47.)

Meanwhile, in May 2006, the Gloggs "sued Plaintiff in the Supreme Court, Suffolk County for trespass and the clearing of trees and underbrush on their property. Plaintiff contested the litigation and it is still pending." (Compl. ¶ 30.)

Prior to July 2006, the assessed value of the Macagna Property was $7,000.00 consisting of $2,000.00 for the land and $5,000.00 for the improvements thereon. (Compl. ¶ 26.) It is alleged that the Town has not completed a town wide assessment in at least 70 years. The Town only reassesses real property when it is improved, and then only for the value of the actual improvements. (*Id.* ¶¶ 49-50.) In April 2006, DePasquale is alleged to have made a notation, with the knowledge consent and participation of Nielsen, who is Sally's sister, changing the assessment of the Macagna property to $27,025.00. (*Id.* ¶ 27.) Although the land assessment remained the same, the assessment for improvements thereon was increased to $25,025.00 "based on a purported renovation described by the Town Assessor's Office as 'Reno Inc. no permits' . . . ." (*Id.* ¶29.) On July 1, 2006, the Town filed the final assessment roll "representing and accepting the combined assessment value of the Macagna Property of $27,025.00 which was previously recommended by [DePasquale]." (*Id.* ¶ 31.) It is alleged that the assessed value was increased because Gloggs requested the intervention of Nielsen, Sally's sister. (*Id.* ¶ 32.) Plaintiff asserts that

> Based on the 2006 State Equalization Rate for East Hampton Town of 0.76 the Assessor's Office claimed 'renovation' increased the equalized full value of the Macagna Property's improvements from $65,294.00 to $3,292,763.00, an increase of 500%. There is no record to substantiate the renovations relied on by the Town Assessor's Office to increase the assessment, because there were not actual renovations or improvements.
> Based on the 2006 State Equalization Rate For East Hampton Town of 0.76, the Assessor's Office claimed 'renovation'

4

> increased the combined equalized full value of the land and
> improvements on the Macagna Property from $795,000.00 to
> $3,555,921.00, which is an increase of 447%.

(Compl. ¶¶ 33, 34.)

In May 2007, Plaintiff hired a tax grievance company to challenge the assessed value of his home. He was not aware at that time, that the Town does not have a policy for reassessing properties on an annual basis and was not aware of the conspiracy among the defendants. (Compl. ¶ 41.) In June 2007, the Town Board of Assessment Review denied Plaintiff's grievance. (*Id.* ¶ 42.) On July 1, 2007, the Town filed the final assessment roll for 2007 confirming the assessed value of the Macagna Property to be $27,025.00. In July 2007, Plaintiff filed a Small Claims Assessment Review. In October 2007, the Small Claims action was settled with a reduction in the assessed value to $25,075.00. (*Id.* ¶¶ 43-46.)

Based on the foregoing Plaintiff asserts three causes of action. The first cause of action asserts a violation of Plaintiff's equal protection rights in that the assessment of the Macagna Property was unwarranted and is not comparable to other similarly situated properties, viz. the Glogg's property at 46 Old West Lake Drive which is assessed at $3,300.00 and the property owned by Plaintiff's other neighbor at 38 Old West Lake Drive which is assessed at $7,400. (Compl. ¶¶ 51-65.) The second cause of action asserts a violation of Plaintiff's substantive and procedural due process rights in that defendants "acted in a manner that established a pattern of misuse of the taxing power when they selectively reassessed Plaintiff's property, compared to those similarly situated, under state and local statutes and refused to rectify the assessment when presented with the glaring illegality of their actions . . . ." (*Id.* ¶76.) The third cause of action asserts that the Gloggs "conspired to and did act in concert to deprive Plaintiff of his

5

constitutional right to equal protection under the laws and improperly increased his tax assessment." (*Id.* ¶81.)

Plaintiff seeks an award of compensatory and punitive damage, attorney's fees, as well as a judgment "directing the Town to reset Plaintiff's real property assessment to an assessed value of $7,000.00; the assessment prior to the illegal selective assessment and refund him for any taxes paid under the illegal assessment." (Compl. "Wherefore" clause.)

## II. Relevant Procedural History

As stated earlier, this action was originally commenced in New York Supreme Court, Suffolk County on June 30, 2009. On July 17, 2009 a notice of removal was filed in this Court asserting that "defendants are entitled to remove this action pursuant to 28 U.S.C. § 1441(b)" as the case falls within the court's federal question jurisdiction. (Dkt. No. 1 at ¶ 3.) Although the notice of removal was filed by the Town Defendants, it asserts that "[c]onsent to remove this case has been obtained from all defendants." (*Id.* ¶ 5.) On July 30, 2009, counsel for the Gloggs moved for leave to appear pro haec vice. That motion was granted on July 31, 2009. Also on that date (1) counsel for the Gloggs appeared in this action when he filed an application for a pre-motion conference for a proposed motion to dismiss; and (2) counsel for Town Defendants filed an application for a pre-motion conference for a proposed motion to dismiss. Thereafter, on August 10, 2009, (1) counsel for Gloggs filed a notice of appearance; and (2) Plaintiff filed a pre-motion conference letter for his proposed motion to remand. By Order dated August 11, 2009, the court set a briefing schedule for the proposed motions. On December 31, 2009, the fully briefed motions were filed.

6

**Discussion**

I.  **The Parties' Contentions**

   A.  **Plaintiff's Motion to Remand**

Plaintiff seeks remand of this action asserting two arguments in support thereof. First, Plaintiff maintains that the removal was procedurally defective because the Gloggs "did not join in the notice of Removal nor did they file a written consent to the removal with the Court. [They] did not file their Notice of Appearance in the action until August 10, 2009, more than thirty (30) days after they were personally served with the Verified Complaint." (Pl.'s Mem in Supp. of Remand Motion at 2.) Second, the Tax Injunction Act, 28 U.S.C. § 1341, and principles of comity mandate this action be remanded back to the state court. Plaintiff seeks attorney's fees and cost pursuant to 28 U.S.C. § 1447(c).

Defendants counter, arguing that (1) Plaintiff's motion for remand is untimely; (2) the removal was not procedurally defective because the Town Defendants obtained consent to removal from the Gloggs; (3) the Court has jurisdiction because Plaintiff's asserts claim pursuant to §1983 and neither comity nor the Tax Injunction Act deprives the Court of jurisdiction; (4) the Court should rule on Defendants' motion to dismiss first; and (5) Plaintiff is not entitled to an award of fees because it was objectively reasonable for Defendants to remove this action.

Town Defendants have moved to dismiss the complaint arguing that (1) the claims are barred by the statute of limitations; (2) the existence of adequate state law remedies provided by the Real Property Tax law is fatal to the procedural due process claim; (3) the substantive due process claim fails because the alleged violation of Plaintiff's rights is not shocking; (4) the class of one equal protection claim is deficient because the complaint does not adequately allege

Plaintiff was intentionally treated differently from similarly situated property owners and that the alleged difference in treatment was the result of non-discretionary state action; and (6) the allegations of a conspiracy are conclusory. The Gloggs move to dismiss asserting that the claims asserted against them are deficient because they are not state actors and the details of the alleged conspiracy are not adequately alleged.

**II.     The Motion to Remand for Lack of Subject Matter
         Jurisdiction Shall be Addressed First**

The Court will first address grounds that challenge its subject matter jurisdiction because, absent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further. *See Osborn v. Haley*, 549 U.S. 225, 243 (2007) ("Ordinarily, when the plaintiff moves to remand a removed case for lack of subject matter jurisdiction, the federal court undertakes a threshold inquiry; typically, the court determines whether complete diversity exists or whether the complaint raises a federal question."); *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,* 549 U.S. 422, 425 (2007) (determining the existence of subject matter jurisdiction is a threshold inquiry); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004) ("[B]y whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements."); *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (internal citations and quotation marks omitted); *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170-171 (2d Cir. 2003) ("We have . . . urged counsel and

district courts to treat subject matter jurisdiction as a threshold issue for resolution . . . ."); *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) ("[B]efore deciding any case [court is ] required to assure [it]self that the case is properly within [its] subject matter jurisdiction."); *Can v. United States*, 14 F.3d 160, 162 n. 1 (2d Cir.1994) ("[I]n most instances the question whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider."). Because the Court ultimately finds that it lacks subject matter jurisdiction over Plaintiffs' claims, it will not address the motions to dismiss pursuant to Rule 12(b)(6).[1]

### III. The Tax Injunction Act and Principles of Comity Require Remand

The threshold jurisdictional issue to be addressed is whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 preclude this Court from exercising jurisdiction. The TIA provides that a district court "shall not enjoin or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.[2]

The Supreme Court considered the breadth of the TIA in *Hibbs v. Winn*, 542 U.S. 88

---

[1] The Court notes that Defendants' argument that Plaintiff's motion to remand is untimely because not filed within thirty days of removal is without merit at least to the extent that the remand motion is premised on a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("[a] motion to remand *on the basis of any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal . . . .") (emphasis added); *see also Mitskovski v. Buffalo and Fort Erie Publi Bridge Auth.*, 435 F.3d 127, 131 (2006) ("We have interpreted section 1447(c) to authorize a remand for either a procedural defect asserted within 30 days of the filing of notice of removal or a lack of subject matter jurisdiction.").

[2] Municipal and local taxes constitute state taxes for purposes of both the Tax Injunction Act and comity. *See, e.g., Hibbs v. Winn,* 542 U.S. 88, 100 n.1 (2004); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1942); *Izzo v. City of Syracuse*, 2000 WL 1222014, at *3 n.3 (N.D.N.Y. Aug. 3, 2000).

9

(2004). Therein the Court concluded that "[n]owhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." *Id.* at 105. Rather, the Court summarized the purpose of the TIA as follows: "In short, in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority." *Id.* at 104-05; *see also Wells v. Malloy,* 510 F.2d 74, 77 (2d Cir. 1975) ("[In enacting the TIA] Congress was thinking of cases where taxpayers were repeatedly using the federal courts to raise questions of state or federal law going to the validity of the particular taxes imposed upon them."). Given Congress' intent, the Court concluded that the TIA should be interpreted to preclude federal jurisdiction only where "state taxpayers seek federal court orders enabling them to avoid paying state taxes . . . ." 542 U.S. at 107. The *Hibbs* Court also considered previous cases applying the TIA and in each case where the TIA precluded jurisdiction the challenge was brought by "plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes)" and therefore "[f]ederal court relief . . . would have operated to reduce the flow of state tax revenue." *Id.* at 106. The TIA requires that in such cases rather than filing a federal lawsuit, a taxpayer "must pursue refund suits instead of attempting to restrain collections." *Id.* at 104.

As the Second Circuit has recently clarified: "*Hibbs* and *Wells* explain that Congress' intent in enacting the TIA was the prevention of a particular evil; namely, using federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax assessed against an individual or entity." *Luessenhop v. Clinton County, New York*, 466 F.3d 259, 266 (2d Cir. 2006).

Also relevant is the separate, albeit related, concept of comity. Comity "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.*, – U.S. –, 130 S. Ct. 2323, 2330 (2010). "The doctrine reflects 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.'" *Id.* (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 112 (1981)).

"[T]he comity doctrine is more embracive than the TIA . . . ." *Id.* at 2332. Comity can preclude the exercise of lower federal court jurisdiction over tax matters not reached by the TIA as the constraints of comity have "particular force when lower federal courts are asked to pass upon on the constitutionality of state taxation of commercial activity. For '[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.'" *Id.* at 2330 (quoting *Dows v. Chicago*, 11 Wall. 108, 110, 20 L. Ed. 65 (1871)).

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget,

> and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Id.* at 2330 n.2 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128, n. 17 (1971) (Brennan, J. concurring in part and dissenting in part)). In *Levin,* the Court held that comity required that a claim of allegedly discriminatory state taxation, framed as a request to increase a commercial competitor's tax burden was required to proceed originally in state court. *Id.* at 2328.

Under the TIA and comity, "[a]s long as the state provides sufficient remedies, the taxpayer is prohibited from filing suit in federal court." *Miller v. State of New York Division of Tax Appeals*, 480 F. Supp.2d 574, 579 (E.D.N.Y. 2007) (citing *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976)). "'Furthermore, although the TIA mentions only injunctions, its policy of comity bars declaratory judgment and 42 U.S.C. § 1983 damages actions as well.'" *Id.* (quoting *Smith v. N.Y. State Dep't of Taxation & Fin.*, 2002 WL 1150013, at *1 (E.D.N.Y. May 17, 2002)); *see Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989); *Fiedler v. New York*, 925 F. Supp. 136, 138 (N.D.N.Y. 1996).

"A state remedy is plain, speedy and efficient if it is procedurally adequate." *Long Island Lighting Co.,* 889 F.2d at 431(citing *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512 (1981) (state remedy must meet "minimal *procedural* criteria") (emphasis in original)). "A state need only provide a "'full hearing and judicial determination' at which [a taxpayer] may raise any and all constitutional objections to the tax." *Id.* (quoting *Rosewell*, 450 U.S. at 514).

The Second Circuit has found that New York provides sufficient remedies in state courts for taxpayers to challenge their real property assessment. *Long Island Lighting Co.,* 889 F.2d at

431.

> First, [a New York taxpayer] may, in a declaratory judgment action under New York C.P.L.R. § 3001 and New York Gen. Mun. Law § 51, assert its challenges to the constitutionality of the assessor's methodology. . . . Moreover, [a taxpayer] may prosecute its declaratory judgment action concurrently with [an] article 7 proceeding[] that attack[s] the validity of its assessments. . . . A second procedurally adequate remedy in which [a taxpayer] might attack the constitutionality of the assessment methodology would be a § 1983 action in state court. . . . Finally, we are not persuaded that . . . article 7 tax certiorari proceedings are procedurally inadequate.

889 F.2d at 431-433. *See also Fair Assessment,* 454 U.S. at 116-17 (availability of a state court § 1983 action supports the withholding of federal jurisdiction).

In the present case, Plaintiff seeks damages including "the value of the improper tax assessment, " (Comp. ¶ 65, 77, 85), and a judgment "directing the Town to reset Plaintiff's real property assessment to an assessed value of $7,000.00 . . . and refund him for any taxes paid under the illegal assessment." (Compl. "Wherefore" clause.) In other words, as Plaintiff is seeking both a refund of the taxes he has paid and an injunction precluding the collection of real estate taxes on his property at the currently assessed rate, he is "challenging the validity [and/] or amount of a particular tax assessed against [him]." *Luessenhop,* 466 F.3d at 266.

The Court finds unpersuasive Defendants' argument that the TIA only precludes federal court jurisdiction when the challenge is to the system or methodology used to assess or levy taxes. (Glogg's Mem. in Opp. to Motion to Remand at 4.) While the TIA does not "prevent federal-court interference with all aspects of state tax administration" *Hibbs,* 542 U.S. at 105,[3] it

---

[3] For example, in *Hibbs,* the Supreme Court held that the TIA does not bar action by taxpayers challenging, on Establishment Clause grounds, a state statute permitting tax credits for contributions to organizations that award educational scholarships and tuition grants to children

does preclude "using federal courts as a vehicle to bring suits challenging *the validity or amount of a particular tax* assessed against an individual or entity." Luessenhop, 466 F.3d at 266 (emphasis added); *see also Miller,* 480 F. Supp. 2d at 580 (holding TIA precludes federal suit wherein plaintiff contends that he is not liable for taxes allegedly owed to New York for the tax year 1994 because he paid taxes to the State of New Jersey).

Given that Plaintiff seeks a refund of taxes paid and an injunction preventing the Town Defendants from collecting real property taxes from him at the current assessed rate and that New York provides sufficient remedies for the Plaintiff in state court, the TIA and principles of comity preclude subject matter jurisdiction in this Court. Accordingly, the motion to remand for lack of federal jurisdiction is granted.

## IV. An Award of Attorneys' Fees is Not Appropriate in this Case

28 U.S.C. § 1447(c) provides, inter alia, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[4] In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

Defendants maintain that they had an "objectively reasonable basis for seeking removal."

---

attending private schools. 542 U.S. at 92.

[4] The Second Circuit has held that "a district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued." *Bryant v. Britt*, 420 F.3d 161, 165 (2d Cir. 2005).

They assert that given the claims of equal protection and due process, it was objectively reasonable for the defendants to believe that jurisdiction existed under 28 U.S.C. § 1331. The Court agrees. Where, as here, the Court's lack of jurisdiction was not obvious, a court cannot conclude that defendants lacked an objectively reasonable basis for seeking removal. *See Shreman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007); *Glazer Capital Mgmt., LP v. Electronic Clearing House, Inc.*, 672 F. Supp. 2d 371, 377 (S.D.N.Y. 2009); *MBIA Ins. Corp. v. Royal Bank of Canada*, – F. Supp. 2d –, 2009 WL 6357936 (S.D.N.Y. Dec. 30, 2009). Accordingly, in the exercise of my discretion, I find that an award of attorneys' fees is not appropriate in this case.

## Conclusion

For the reasons set forth above, Plaintiff's motion is granted to the extent it seeks remand of this action for lack of subject matter jurisdiction but is denied to the extent it seeks fees and costs. This matter is hereby remanded to the Supreme Court of the State of New York, County of Suffolk.

**SO ORDERED.**

Dated: Central Islip, New York
August 16, 2010

/s/
Denis R. Hurley
Senior District Judge